STATE OF CONNECTICUT *v.* STEPHEN
SPIEGELMANN
(AC 22726)

Flynn, Bishop and McLachlan, Js.

Argued November 18, 2003—officially released February 10, 2004

*David T. Grudberg*, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Maxine V. Wilensky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Stephen Spiegelmann, appeals from the judgment of conviction, rendered after a jury trial, of three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), two counts of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (1), one count of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (2), and one count of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a). The defendant was acquitted of one count of risk of injury to a child, in violation of § 53-21 (1), which charged the defendant with the photographing of intimate parts of a minor. The trial court sentenced the defendant to a total term of sixty years incarceration, consisting of three consecutive twenty year terms on the sexual assault counts and concurrent terms on the remaining counts.

The defendant argues on appeal that the trial court acted improperly by (1) allowing certain pornographic materials and testimony regarding such materials to be entered into evidence although the victim had not specifically identified them, (2) admitting prejudicial hearsay under the constancy of accusation doctrine, thereby depriving the defendant of a fair trial, and finally (3) permitting prosecutorial misconduct during cross-examination of the defendant and during closing argument, thereby depriving him of a fair trial. We are not persuaded and therefore affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The victim accused the defendant of sexually assaulting her on a regular basis beginning at age four and ending when she was nine years old.[1] After the

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom her identity may be ascertained. See General Statutes § 54-86e.

victim last visited the defendant in August, 1999, her mother noticed that she had a bleeding injury on her arm, apparently caused by fingernails that were dug into her skin. The victim told her mother that the defendant had injured her and had also chased her with a knife. The victim did not reveal any incidents of sexual abuse to her mother at that time. The victim's mother immediately reported these incidents of physical violence to the local police department, which began an investigation into possible physical abuse of the victim by the defendant. The police referred the matter to the department of children and families (department). Subsequently, on September 10, 1999, the victim revealed to Celmira Gonzalez, an investigator for the department, that the defendant had also subjected her to sexual abuse. Gonzalez recommended that the victim be evaluated by the Yale Child Sexual Abuse Clinic and referred the case to the police for investigation of possible sexual abuse. The victim revealed to Florence Freudenthal Mackey at the Yale clinic the details of the alleged sexual abuse that she had suffered at the hands of the defendant, and she was physically examined by Janet Murphy, a nurse practitioner.

Two detectives in the sex crimes unit of the local police department met with the victim on November 10, 1999, and took her sworn statement, in which she disclosed that she had been sexually abused by the defendant.

At trial, the victim testified in graphic detail about both the physical and sexual abuse she repeatedly had endured from the defendant. The victim testified that the defendant touched her "in a way she didn't like," in that he had touched her face, breasts, buttocks and vagina; had touched her with his penis in her vagina, buttocks and mouth; had penetrated her vagina, mouth and rectum with his penis; had stuck his finger in her vagina and rectum; and had placed his tongue inside

and outside her vagina and stuck his tongue in her mouth "and moved it around." The victim also testified that the defendant forced her to sleep in the same bed with him when she spent the night, that he would rub his penis on her chest until he ejaculated onto her and would prevent her from leaving the bed to clean herself.

The victim also testified that the defendant's bathroom floor usually had "number two" and magazines on it when she would come to visit. It was clear from the victim's testimony that "number two" was used in reference to human excrement. The victim further testified that the defendant would force her to take baths in water in which the defendant had defecated and he would then rub his feces on her. On other occasions, the victim testified, the defendant would defecate in a container and rub his feces on her chest, back and legs.

The victim testified that the defendant had shown her various pornographic materials, including photographs, magazines and videotapes depicting various images of men and women engaging in sexual activity, naked men and women, and naked people with "number two." The victim also testified that the defendant had read her stories that he had printed from the Internet that involved "naked people going to the bathroom." The victim testified that the defendant had threatened to kill her, her mother and her dog if she told anyone about the abuse. When she had tried to stop the defendant, the victim testified, he would inflict harm on her, chase her with a knife or threaten her.

Immediately prior to the defendant's arrest on November 18, 1999, the police executed a search and seizure warrant for his home and found magazines, photographs, sexual fantasy stories from the internet and videotapes in the locations that the victim had specified. Material stored on the defendant's computers

was reviewed by the Federal Bureau of Investigation (FBI). Thomas Veivia, an FBI agent, testified at trial that his search revealed approximately 45,000 images of a sexual nature, including images of sexual activity involving bodily fluids such as urine, feces, semen and saliva.

## I

We first address the defendant's claim that the court acted improperly in allowing certain evidence to be presented to the jury because the victim had not specifically identified it as something that she had been shown and, therefore, it should have been excluded as more prejudicial than probative. The defendant has specifically challenged only the admission of the "scatological"[2] fantasy stories that were printed from the Internet and the admission of some e-mail correspondence arising out of Internet chat room discussions in which the defendant participated. These are the only materials admitted into evidence that the victim did not specifically identify as having been shown to her. The defendant clearly objected to the admission of the stories at trial, thereby preserving that issue for appellate review. However, the defendant did not preserve the issue as to the e-mail chats. When the e-mail chats were identified by the defendant and offered into evidence by the state, the court asked if the defendant had any objection, to which his counsel replied: "No objection on this." The defendant therefore failed to raise this evidentiary claim at trial, leaving this issue unpreserved for our review on appeal. See State v. Andresen, 256 Conn. 313, 323–24, 773 A.2d 328 (2001). Unpreserved claims of error may be raised on appeal if the defendant requests

---

[2] The court termed the stories "scatological." "Scatology" is defined as: "1. The study of fecal excrement, as in biology. 2. An obsession with excrement or excretory functions. 3. Obscene language or literature, esp. that dealing with excrement and excretory functions." The American Heritage College Dictionary (3d Ed. 1993).

review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and meets all of its requirements. The defendant did not seek review under *Golding* in his principal brief, but rather sought such review in his reply brief in response to the state's anticipatory argument. "The reply brief is not the proper vehicle in which to provide this court with the basis for our review under an *Evans-Golding* analysis." *State* v. *Jones*, 34 Conn. App. 807, 815, 644 A.2d 355, cert. denied, 231 Conn. 909, 648 A.2d 158 (1994). Furthermore, even if the defendant had sought review under *Golding*, evidentiary claims are not of constitutional magnitude and would thus fail under *Golding*'s second prong. See *State* v. *Hansen*, 39 Conn. App. 384, 390, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). We therefore decline to review the defendant's unpreserved claim regarding the propriety of the admission of the e-mail chats into evidence.

Regarding the admission of the scatological stories, the defendant argues that they were admitted improperly because the probative value of the stories was substantially outweighed by the prejudice that the admission of the explicit material had on the defendant. The state declared at trial that it was not going to ask the victim specifically to identify the stories it sought to admit. It justified this decision on the basis of a reluctance to "revictimize" her. The state claimed that the stories seized from the defendant's home were representative of the type that the victim claimed that the defendant had read to her and should be admitted on that ground. The court admitted the stories, but rejected the state's "representative" theory of admission, finding instead that the stories were probative of the fact that the defendant had an interest in scatological materials and that this showed his motive or "obsession." The court relied on *Boyle* v. *Johnson*, 93 F.3d 180, 184 (5th Cir. 1996), cert. denied, 519 U.S. 1120, 117 S. Ct. 968,

136 L. Ed. 2d 853 (1997), in which evidence of the defendant's sexual obsession was shown by the admittance of certain sexual materials. The court acknowledged that the materials had a propensity to be prejudicial, but noted that the defendant's interest in scatology was probative in that scatology "has a fairly limited band of enthusiasts." Rather than admitting all of the stories into evidence, the court permitted the state to admit only five, stating: "To introduce volumes and volumes of these materials, I don't see as adding to the probative value . . . ."[3]

We now set forth the standard of review for this claim. "It is well established that a trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Colon*, 70 Conn. App. 707, 718, 799 A.2d 317, cert. denied, 261 Conn. 933, 806 A.2d 1067 (2002).

We need not reach the issue of whether the scatological stories were admissible, however, because even if we assume without deciding that the court abused its discretion in admitting the stories into evidence, the defendant has failed to show any harm from their admission. See *State* v. *Shabazz*, 246 Conn. 746, 759, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999); *Lusas* v. *St. Patrick's Roman Catholic Church Corp.*, 125 Conn. 206, 209, 4 A.2d 333 (1939) ("new trial ought not to be granted for the

---

[3] In the record, the court stated that it arbitrarily had decided to admit into evidence only three of the many stories presented by the state. However, upon reviewing the actual full exhibits admitted in trial, it is clear that five, not three, of the stories were admitted as full exhibits.

improper admission of evidence where it is apparent
to the court that no injury to the complainant and no
injustice could have resulted from the error" [internal
quotation marks omitted]); *State* v. *Colon*, supra, 70
Conn. App. 718; *Bugryn* v. *Bristol*, 63 Conn. App. 98,
112, 774 A.2d 1042, cert. denied, 256 Conn. 927, 776
A.2d 1143, cert. denied, 534 U.S. 1019, 122 S. Ct. 544,
151 L. Ed. 2d 422 (2001). To establish the harmfulness
of an evidentiary ruling, "the defendant must show that
it is more probable than not that the improper action
affected the result. . . . The question is whether the
trial court's error was so prejudicial as to deprive the
defendant of a fair trial, or, stated another way, was
the court's ruling, though erroneous, likely to affect
the result?" (Citation omitted; internal quotation marks
omitted.) *State* v. *Russo*, 62 Conn. App. 129, 137, 773
A.2d 965 (2001).

In the present case, the defendant cannot show that
the admission of the scatological stories affected the
result of the trial, nor can he show that he was deprived
of a fair trial. The defendant did not object at trial to
the admission of other evidence that was equally
graphic, nor did he argue on appeal that the admission
of this evidence was reviewable under *Golding*.[4] In addi-
tion to the victim's detailed testimony regarding the
acts of abuse committed against her, the court admitted
into evidence items that the victim identified as things
that had been shown to her by the defendant. Among
the items admitted as full exhibits were graphic photo-
graphs depicting feces on a plate and women consuming

---

[4] The defendant states in his brief that the photographs identified by
the victim were admitted into evidence over defense counsel's objection.
However, our review of the record indicates that this objection appears to
have been directed at whether there was a sufficient foundation for these
photographs to be shown to the victim to refresh her recollection and was
not based on their prejudicial effect on the defendant if they were to be
admitted as full exhibits. Therefore, this objection did not preserve this
issue properly for our review.

human excrement, and a videotape entitled "Fontaner der Lust," which portrays, according to the defendant's testimony, "people urinating on each other and doing things like that." Several pornographic magazines identified by the victim were also admitted, as well as a spiked rubber ball device and a rubber ring device identified by the victim. Concededly, the stories at issue that were admitted into evidence depicted highly offensive material. However, when these stories are viewed alongside the large quantity of other equally vulgar materials that were admitted into evidence without objection, the conclusion that the defendant was in no way prejudiced is indubitable.[5]

We also note that although the defendant was convicted of seven separate offenses, the jury acquitted him of one of the counts with which he was charged. This indicates that the jury was not so carried away by the explicitness of the contents of the evidence before it that it could not objectively reach a finding of guilt or innocence. We conclude that the admission of the scatological stories caused no harm to the defendant.

## II

We next turn to the defendant's second claim. The defendant argues that the court improperly admitted the testimony of four witnesses under the constancy of accusation doctrine, contrary to the holding of *State v. Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc).[6]

---

[5] To the extent that the defendant seeks review of the admission of evidence to which he did not object at trial, we decline to afford review.

[6] "The constancy of accusation doctrine allows a witness to whom the victim of a sex crime has confided the details of the crime to testify in court about what the victim told the witness as an aid in assessing the credibility of the victim. The doctrine is not strictly an exception to the hearsay rule because the testimony is not admitted to prove the truth of the testimony of the witness. The doctrine is now limited in Connecticut to allow testimony only as to the fact and timing of the victim's complaint or as to details necessary to associate the victim's complaint with the pending charge, for example, the time and place of the attack or the identity of the defendant. Other testimony of a witness who was the confidante of the victim is limited

Specifically, the defendant avers that the victim's testimony provided an insufficient predicate for the admission of the witnesses' corroborative testimony. In addition, the defendant argues that the report of the assault to Gonzalez, a department investigator, was an "official report" and, therefore, all of the testimony by those witnesses to whom the victim had reported the assault following her meeting with Gonzalez was admitted improperly under *State* v. *Samuels*, 75 Conn. App. 671, 817 A.2d 719, cert. granted, 263 Conn. 923, 823 A.2d 1216 (2003). The defendant did not object to the admission of this testimony on these grounds at trial.[7] Therefore, this issue was not preserved properly for our review.

The defendant has requested that we review these claims under *State* v. *Golding*, supra, 213 Conn. 239–40. However, the issues raised by the defendant regarding constancy of accusation testimony are evidentiary in nature. We previously have held that *Golding* does not apply to evidentiary claims, which, standing alone, do not rise to the level of constitutional magnitude that is required by *Golding*'s second prong. *State* v. *Minor*, 80 Conn. App. 87, 93, 832 A.2d 697 (2003); *State* v. *Morales*, 78 Conn. App. 25, 47, 826 A.2d 217, cert. denied, 266 Conn. 901, 832 A.2d 67 (2003). In fact, our Supreme Court stated in *Golding* that "once identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed." *State* v. *Golding*, supra, 241.

---

to corroboration of the victim's testimony, but cannot be used for substantive purposes. *State* v. *Troupe*, 237 Conn. 284, 304–305, 677 A.2d 917 (1996) (en banc)." *State* v. *Minor*, 80 Conn. App. 87, 93 n.8, 832 A.2d 697 (2003).

[7] At trial, the defendant objected to the scope of the witnesses' testimony on the ground that it went into more detail of the sexual assault than *Troupe* permits. The defendant also objected to the number of constancy of accusation witnesses on the grounds that the testimony was cumulative and prejudicial to him. The defendant has not revived these objections in this appeal.

The defendant argues that *Golding* applies because the improper admission of the constancy of accusation testimony prejudiced him to the point that he was deprived of his constitutional right to receive a fair trial. In support of this claim, the defendant relies on our recent holding in *State* v. *Samuels*, supra, 75 Conn. App. 671. The defendant's reliance on *Samuels* is misplaced. In *Samuels*, we held that the cumulative effect of the constancy of accusation testimony that was admitted improperly denied the defendant his right to a fair trial. Id., 690. We stated that "[t]he improper admission of the testimony of each constancy of accusation witness . . . was harmless and did not, alone, create such substantial prejudice to the defendant . . . . [T]he testimony is part of a mosaic of improperly admitted evidence that, *in the aggregate*, served to deny the defendant a fair trial." (Emphasis added.) Id.

Although the defendant in the present case argues that the accumulation of improperly admitted testimony deprived him of a fair trial, it is notable that in this case, unlike in *Samuels*, the defendant made no proper *evidentiary* objections at trial.[8] In *State* v. *Joyner*, 225 Conn. 450, 625 A.2d 791 (1993), our Supreme Court held that admission of expert testimony was an evidentiary matter and not, per se, constitutionally significant, explaining that "[e]ven our ruling in *State* v. *Torres*, 210 Conn. 631, 642–43, 556 A.2d 1013 (1989), which held that a series of inconsistent evidentiary rulings could be so injurious as to impair a defendant's constitutional

---

[8] Although the defendant objected to the constancy of accusation testimony on other grounds, we previously have held that "[a]ppellate review of evidentiary rulings is ordinarily limited to the specific legal issue raised by the objection of trial counsel." (Internal quotation marks omitted.) *State* v. *Beliveau*, 36 Conn. App. 228, 241, 650 A.2d 591 (1994), aff'd, 237 Conn. 576, 678 A.2d 924 (1996). Therefore, the defendant's objections at trial, which differ from those raised on appeal, did not adequately preserve the issue for appellate review. See *State* v. *Morales*, 45 Conn. App. 116, 127–28, 694 A.2d 1356 (1997), appeals dismissed, 246 Conn. 249, 714 A.2d 677 (1998).

rights, arose in the context of rulings to which proper exception had been taken." *State* v. *Joyner*, supra, 480; see also *State* v. *Thompson*, 71 Conn. App. 8, 13, 799 A.2d 1126 (2002). Because the defendant has raised unpreserved evidentiary claims of error, we decline to review this issue. "Regardless of how the defendant has framed the issue, he cannot clothe an ordinary evidentiary issue in constitutional garb to obtain appellate review." (Internal quotation marks omitted.) *State* v. *Francis D.*, 75 Conn. App. 1, 11, 815 A.2d 191, cert. denied, 263 Conn. 909, 819 A.2d 842 (2003).

### III

We next address the defendant's final claim on appeal, namely, that of prosecutorial misconduct during cross-examination and closing argument. The defendant did not object at trial to the state's cross-examination of him or to its closing argument. Therefore, the defendant has requested that we review this claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. The record is adequate for our review and claims of prosecutorial misconduct are of constitutional magnitude; therefore, we will review the defendant's claim under *Golding*. See *State* v. *Pepper*, 79 Conn. App. 1, 19, 828 A.2d 1268, cert. granted on other grounds, 266 Conn. 919, 837 A.2d 801 (2003). "To prove prosecutorial misconduct, the defendant must demonstrate substantial prejudice. . . . [T]he defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." (Citations omitted; internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 699–700, 793 A.2d 226 (2002). "Claims of prosecutorial misconduct trigger a two-pronged inquiry. First, we must examine the allegedly improper conduct to determine if it was, in fact, improper and rose to the level of prosecutorial misconduct. If it did, we will analyze the effect of the miscon-

duct to determine if it deprived the defendant of a fair trial." *State* v. *McKiernan*, 78 Conn. App. 182, 195, 826 A.2d 1210, cert. denied, 266 Conn. 902, 832 A.2d 66 (2003).

The defendant first submits that the prosecutor referred to facts that were not in evidence during her closing argument. Specifically, the defendant points to a rhetorical story told by the prosecutor in her rebuttal at closing argument.[9] Although no evidence was admitted at trial of the facts presented in the prosecutor's story, which was alleged to have been a tale of personal experience, the jury was not exposed to any facts about this case that had not been admitted into evidence. Rather, the prosecutor appealed to the common sense of the jury (rather than to its sympathy) by use of a rhetorical device. We have stated that "[o]ur vigilance concerning prosecutorial misconduct does not lead us to a desire to exclude rhetoric from oral advocacy." *State* v. *Cotton*, 77 Conn. App. 749, 774, 825 A.2d 189, cert. denied, 265 Conn. 911, 831 A.2d 251 (2003). Although it is axiomatic that "[a] prosecutor, in fulfilling his duties, must confine himself to the evidence in the record," this notion is balanced against the premise that "[j]urors are not expected to lay aside matters

[9] The state argued: "Now, I'd like to address some of [the defense attorney's] argument before I begin with the rest of mine. He . . . talked about how there was sex every time and that there were over 100 videos. . . . However, I'm going to tell you a story about a little girl I once baby-sat for. . . . I heard a bloodcurdling scream. I go running, oh, my God, what happened? A bug. A huge bug. An huge, ugly bug. How big was the bug? This big. And she is hysterical. It takes us ten minutes of looking through the kitchen and, sure enough, ladies and gentlemen, there was a bug. And it was big. And it was ugly. It was a cockroach, but it wasn't this big.

"And I . . . tell you that story because to a child, it might have seemed like every time that she had sex. And certainly maybe it wasn't penile-vagina intercourse. It might have been his fingers. It might have been her tongue. . . . And in terms of the cockroach story, the little girl did tell the truth. There was a big, ugly bug. The difference was in one of the details, which was [that] it wasn't this big; it was this big."

of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *State* v. *Rogelstad*, 73 Conn. App. 17, 29–30, 806 A.2d 1089 (2002).

Although the facts in the prosecutor's story had not been admitted into evidence, the jury was not being asked to rely on the truth of the story to reach a finding of guilt. Furthermore, the prosecutor was responding to the defendant's closing argument, in which the defendant had argued that if the victim had had intercourse with him as many times as she had claimed, there would have been evidence of that fact in her physical examination, which showed no such evidence. We conclude that "[i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 162, 836 A.2d 224 (2003). Therefore, the prosecutor's use of the rhetorical device was not improper.

The defendant next claims that the prosecutor appealed to the passions and emotions of the jury. "A prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal. . . . Therefore, a prosecutor may argue the state's case forcefully, [but] such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. " (Citations omitted; internal quotation marks omitted.) *State* v. *Singh*, supra, 259 Conn. 719.

The defendant first argues that the prosecutor discussed the defendant's possession of pornographic materials with the purpose of inflaming the passions of the jurors. Because the defendant has failed to specify which statements were allegedly improper, we decline to review this claim, as it was briefed inadequately. See *Raymond* v. *Rock Acquisition Ltd. Partnership*, 50 Conn. App. 411, 419–20, 717 A.2d 824 (1998).

The defendant also cites the prosecutor's statements regarding the defendant's "assaults" on the victim's senses as well as the juror's own common sense and sense of justice, made in reference to the defendant's testimony, as improper conduct intended to incite the passions of the jury.[10] We reject this contention as well. "It is the prosecutor's duty to see that justice is done and to use any legitimate means to accomplish that, including persuading the jury that its verdict will accord with justice." *State* v. *Yusuf*, 70 Conn. App. 594, 632, 800 A.2d 590, cert. denied, 261 Conn. 921, 806 A.2d 1064 (2002). The prosecutor's statements were not so blatantly egregious as to rise to the level of impropriety necessary to cause substantial prejudice to the defendant, particularly when compared to some of the greater volume of improper conduct at issue in recent cases in which our Supreme Court has denied the defendant redress. See, e.g., *State* v. *Thompson*, 266 Conn. 440, 832 A.2d 626 (2003). Additionally, the defendant has

---

[10] The state argued: "[The defendant] wants you to believe that [the victim's] behavior, I assume, is not consistent despite what the experts say as to what is exhibited by children who are sexually assaulted. A person who has a wide and diverse background in the area of paraphilias, specifically fetishes involving feces, urine, sex with a variety of different subjects and people. It's not a stretch of the imagination that he would add one more fetish, one more perversion and extend this and envelop [the victim] in the world that he created. He wants you to believe that he did not practice that obsessive secret world on [the victim]. He wants you to find him not guilty despite the overwhelming evidence. And in this, he wants to assault your last sense, and this is your sense of justice."

not demonstrated that the trial was infected with unfairness. Therefore, we conclude that the prosecutor's statements did not result in an unconstitutional violation of the defendant's right to a fair trial.

The defendant's final claim of prosecutorial misconduct is that the prosecutor was sarcastic and argumentative during her cross-examination of the defendant.[11] It is improper for a prosecutor to inject sarcasm into the cross-examination of the defendant. See *State* v. *Santiago*, 73 Conn. App. 205, 224, 807 A.2d 1048 (2002), cert. granted, 262 Conn. 939, 815 A.2d 673 (2003). The present case is distinguishable from *Santiago*, however, in that the defendant's counsel did not object to the alleged sarcastic comments and the court did not, as in *Santiago*, threaten the prosecutor with contempt or find that the comments warranted a curative instruction to the jury. Compare id., 226. "[W]hether a new trial or proceeding is warranted depends, in part, on whether defense counsel has made a timely objection to any of the prosecutor's improper remarks. When defense counsel does not object, request a curative instruction or move for a mistrial, he presumably does not view the alleged impropriety as prejudicial enough to seriously jeopardize the defendant's right to a fair trial." *State* v. *Reynolds*, supra, 264 Conn. 165.

We do not condone the prosecutor's use of sarcasm in her cross-examination of the defendant. However, we fail to see how any impropriety that may have occurred in those isolated instances deprived the defendant of a fair trial. "We do not scrutinize each individual comment in a vacuum, but rather we must review the comments complained of in the context of the entire

---

[11] The defendant cites the following as an example of the prosecutor's sarcasm during cross-examination of him:

"[Prosecutor]: And I—again, I guess it's just a coincidence that the police found [the pornographic materials] where [the victim] said they would be; isn't that correct? It's just a coincidence, right, sir? Yes or no?"

trial. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." (Internal quotation marks omitted.) *State* v. *Bothwell*, 78 Conn. App. 64, 69, 826 A.2d 182, cert. denied, 266 Conn. 908, 832 A.2d 72 (2003). The few interjections of sarcasm into the cross-examination of the defendant were insufficient to deprive him of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.