STATE OF CONNECTICUT *v.* RAYMOND F. WARREN
(AC 24170)

Lavery, C. J., and West and DiPentima, Js.

Argued April 20—officially released June 22, 2004

*Sebastian O. DeSantis*, special public defender, for the appellant (defendant).

*Annemarie L. Braun*, special deputy assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney, and *Stephen M. Carney*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Raymond F. Warren, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1). On appeal, the defendant claims that the trial court improperly admitted the testimony of a Norwich police officer under the constancy of accusation doctrine, beyond the parameters set forth in *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc). We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On May 2, 2001, the time of the charged offenses, the victim[1] had been living with her mother and the defendant for one week. The defendant and the victim's mother had been living together at the residence for five years and were engaged to be married.

On the afternoon of May 2, 2001, the victim was doing yard work at the residence while the defendant was

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

sitting on a nearby sofa. The defendant rose from the couch, walked toward the basement and said to the victim, "Skinny, why don't you come downstairs so I can show you a place to cool off in case you need to." The victim followed the defendant to the basement. The defendant increased the volume on the stereo and pointed to a bench. He told the victim that "[t]his is where you can go to cool off" and offered her his hand. The victim responded "no" and backed away from the defendant. The defendant then grabbed the victim's arm and lunged toward her, pinning one of her arms behind her back and pulling her toward him. The victim struggled, but could not escape his grip.

The defendant asked the victim if she was afraid of him, to which she responded that she felt "uncomfortable" and told him to "[l]et me go before I scream." The defendant then attempted to kiss the victim. He grabbed her buttocks and continued to try to kiss her on her lips and neck. The victim continued to struggle, avoiding eye contact with the defendant because she was afraid. The defendant said to the victim, "I've been waiting for this for three years," and grabbed her bathing suit in the area of her vagina.

At that point, the victim struck the defendant in the knee with her right knee. As the defendant stumbled backward, she was able to escape the defendant's grasp when he loosened his grip on her arm. She began screaming and ran upstairs from the basement to the front of the residence. The victim told a neighbor about the assault within minutes of the incident. Shortly thereafter, the victim also told her mother and her own boyfriend the details of the assault. The victim made a statement to the police that afternoon.

The defendant was charged with sexual assault in the third degree in violation of § 53a-72a (a) (1) and unlawful restraint in the first degree in violation of

General Statutes § 53a-95 (a). After a jury trial, the defendant was convicted of sexual assault in the third degree and acquitted of unlawful restraint in the first degree. The court sentenced him to five years incarceration, execution suspended after four and one-half years, and fifteen years probation. This appeal followed.

The defendant's sole claim on appeal is that the court improperly allowed James Curtis, an officer in the Norwich police department, to testify regarding the details of the assault pursuant to the constancy of accusation exception to the hearsay rule. The defendant contends that he was deprived of a fair trial because Curtis' testimony[2] went beyond the parameters of the exception as

---

[2] Curtis testified in relevant part:

"[The Prosecutor]: And did she say what happened next?

"[The Witness]: She said there was really nothing to it and she proceeded to leave. As she was leaving, he told her to stop, which she did. She turned and noticed that at the time he had been on crutches due to a knee injury and now noticed he was only on one crutch and walking on his injured leg. He then grabbed her right arm and pulled her close to him.

"[The Prosecutor]: And did she say what happened next?

"[The Witness]: Yes. He pulled her body close to his, pinning her body, attempted to kiss her on the face and then lips. She turned away. She said no, she did not want to have any contact with him, attempted to fight him off. He held her body—he held her body to his and at one time reached up into her—under her shorts, placing his hand on the outside of her vaginal area on her swimsuit. . . .

"[The Prosecutor]: And did she say what happened next?

"[The Witness]: A struggle ensued. She fought him off, pushed him [into]— I guess it would be an oil furnace tank or furnace itself, and was able to break free and exit the basement.

"[The Prosecutor]: And did she say what happened then?

"[The Witness]: After that, she met a neighbor in front of the residence and immediately told the neighbor what happened, but was unsure of what she wanted to do. She was afraid, embarrassed.

"[The Prosecutor]: Okay. And ultimately did you take a statement from her?

"[The Witness]: Yes, I did.

"[The Prosecutor]: And did you ask her about whether she had been penetrated?

"[The Witness]: Yes, I did. And she said no, she had not.

"[The Prosecutor]: All right. When you asked her that, did you explain what penetrate means?

"[The Witness]: Yes, absolutely."

provided by *State* v. *Troupe,* supra, 237 Conn. 304–305.[3] The defendant seeks review under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[4] because trial counsel failed to preserve the claim properly by timely objecting to Curtis' testimony.

The state argues that claims relating to constancy of accusation testimony are evidentiary in nature and, thus, do not implicate a defendant's constitutional rights, an essential element under *Golding.* The state points out that counsel must object to the admission of evidence properly to preserve a claim challenging the admission of such evidence on appeal. We agree with the state and, accordingly, decline to review the defendant's claim.

---

[3] In *State* v. *Troupe,* supra, 237 Conn. 287, our Supreme Court, while declining to abandon the exception, modified the constancy of accusation doctrine. The court concluded that "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. . . . Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported. In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant." Id., 304–305.

[4] In *State* v. *Golding,* supra, 213 Conn. 233, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) Id., 239–40.

It is well settled that unpreserved evidentiary claims will not be reviewed under *Golding*. See *State* v. *Morales*, 78 Conn. App. 25, 47, 826 A.2d 217, cert. denied, 266 Conn. 901, 832 A.2d 67 (2003); see also *State* v. *Francis D.*, 75 Conn. App. 1, 11, 815 A.2d 191, cert. denied, 263 Conn. 909, 819 A.2d 842 (2003).

We agree with the state that issues regarding constancy of evidence are evidentiary in nature and, as a result, are not entitled to *Golding* review. See *State* v. *Spiegelmann*, 81 Conn. App. 441, 451, 840 A.2d 69, cert. denied, 268 Conn. 921, 846 A.2d 882 (2004). Although the defendant in this case claims that Curtis' testimony violated the defendant's constitutional right to a fair trial, our Supreme Court has stated that "once identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed." *State* v. *Golding*, supra, 213 Conn. 241; see also *State* v. *Spiegelmann*, supra, 451.

The defendant relies on *State* v. *Samuels*, 75 Conn. App. 671, 817 A.2d 719, cert. granted in part, 263 Conn. 923, 823 A.2d 1216 (2003), in contending that his claim is entitled to *Golding* review. The defendant's reliance on *Samuels* is misplaced. Although we extended *Golding* review to the defendant's constancy of accusation claim in *Samuels*, holding that the improper admission of the testimony of four constancy of accusation witnesses deprived the defendant of a fair trial, *Samuels* is distinguishable from the present case. Id., 689–90.

In *Samuels*, we specifically stated that "[a]lthough any one of the hearsay statements, alone, would not have substantially prejudiced the defendant's right to a fair trial, the *cumulative effect* of the witnesses' testimony, we believe, escalated the harm to a constitutional level." (Emphasis added.) Id., 693. The defendant in this case does not claim that it was the *cumulative effect* of the state's constancy of accusation witnesses that

deprived him of a fair trial, but rather that the testimony of Curtis *alone* deprived him of that constitutional right.

Additionally, the defendant in *Samuels* timely objected to each of the state's constancy of accusation witnesses. The defendant in this case did not preserve his claim at trial by objecting to Curtis' testimony. His claim, therefore, necessarily fails to satisfy the second prong of *Golding*. See *State* v. *Spiegelmann*, supra, 81 Conn. App. 451; *State* v. *Minor*, 80 Conn. App. 87, 93, 832 A.2d 697, cert. denied, 267 Conn. 907, 840 A.2d 1172 (2003); *State* v. *Francis D.*, supra, 75 Conn. App. 11. "Regardless of how the defendant has framed the issue, he cannot clothe an ordinary evidentiary issue in constitutional garb to obtain appellate review." (Internal quotation marks omitted.) *State* v. *Spiegelmann*, supra, 453.

The judgment is affirmed.

In this opinion the other judges concurred.