STATE OF CONNECTICUT *v.* JOHN W. BRISCO
(AC 23739)

Foti, Flynn and Dupont, Js.

Argued March 26—officially released July 20, 2004

*Pamala J. Favreau,* with whom, on the brief, was *Conrad Ost Seifert,* for the appellant (defendant).

*Julia K. Conlin,* deputy assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich,* state's attorney, and *Mark A. Stabile,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, John W. Brisco, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), one count of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (1) and one count of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21 (2).[1] On appeal, the defendant claims that the

---

[1] The conduct for which the defendant was convicted of risk of injury to a child occurred between July, 1995, and March, 1997. The versions of § 53-21 in effect over that period were the revision to 1995 (July, 1995, to October 1, 1995), the revision to 1995 as amended by Public Acts 1995, No. 95-142, § 1 (October 1, 1995, to January 1, 1997), and the revision to 1997 (January 1, 1997 to March, 1997). The differences between those versions of § 53-21 are not relevant to the issues raised in this appeal. For convenience, we refer to the revision to 1997 as the applicable statute.

trial court improperly (1) admitted constancy of accusation testimony, (2) suppressed certain of the victim's confidential treatment records, (3) excluded certain exhibits from evidence and (4) granted the state's motion in limine. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, H,[2] is the cousin of the defendant's wife. H began baby-sitting for the defendant and his wife in October, 1994, when she was thirteen years old. In August, 1995, when H was fourteen years old, the defendant picked her up to baby-sit his son, but told her that before going to his house, he had to stop at the car repair shop where he worked. On arriving at the car repair shop, the defendant told H to follow him into the back bay where the cars were repaired. While in the back bay, the defendant had sexual intercourse with H. Additionally, on various dates between August, 1995, and March, 1997, when H was between the ages of fourteen and fifteen, the defendant had contact with H's intimate parts in a sexual and indecent manner at the car repair shop where he worked.

The defendant was arrested on December 29, 2000, and charged, by amended substitute information filed July 30, 2002, with three counts of sexual assault in the second degree and four counts of risk of injury to a child. The defendant's primary defense at trial was that he had sexual relations with H only after she became sixteen years old. On November 7, 2002, the jury returned a verdict of guilty on one count of sexual assault in the second degree in violation of § 53a-71 (a) (1), one count of risk of injury to a child in violation of § 53-21 (2) and one count of risk of injury to a child

---

[2] In accordance with General Statutes § 54-86e, as amended by Public Acts 2003, No. 03-202, § 15, and this court's policy of protecting the privacy interests of victims in sexual abuse matters, we decline to identify the victim by name, or others through whom the victim's identity may be ascertained.

in violation of § 53-21 (1). The jury found the defendant not guilty on the two other counts of sexual assault in the second degree and two other counts of risk of injury to a child. On December 19, 2002, the court sentenced the defendant to a total effective term of twenty years incarceration, suspended after seven years, and ten years of probation with special conditions. This appeal followed. Additional facts and procedural history relevant to the defendant's claims will be set forth as needed.

I

The defendant first claims that the court abused its discretion by admitting the testimony of three constancy of accusation witnesses.[3] Specifically, the defendant argues that he was prejudiced (1) by the cumulative effect of the testimony of Keith Stolarek, Gina Cole and Jeffrey Payette, and (2) because Cole and Payette testified about conversations that occurred after H made her formal complaint to the police. We do not agree.

The following additional facts and procedural history are relevant to the resolution of the defendant's claim. On October 30, 2002, the court denied the defendant's motion to preclude testimony from constancy of accusation witnesses as long as the witnesses testified "within the bounds and constraints of the constancy of accusation rule." On October 31 and November 1, 2002, the state presented nine constancy of accusation witnesses.

The first constancy of accusation witness, T, testified that when H was fourteen years old, H told her that

---

[3] The defendant also claims that the court improperly admitted the testimony from all nine constancy of accusation witnesses and asks this court to overrule State v. Troupe, 237 Conn. 284, 677 A.2d 917 (1996) (en banc). During oral argument, however, the defendant conceded that it is not the place of this court to overrule the precedent of our Supreme Court. See State v. Davis, 76 Conn. App. 653, 663, 820 A.2d 1122 (2003).

H and the defendant had had sexual intercourse at his residence.

Next, J testified that when H was a sophomore or junior in high school, H told her that the defendant had sexually molested her when she was fourteen years old and that it usually occurred at his residence when H was baby-sitting for his son.

Next, H's stepmother, C, testified that in July, 2000, H initially disclosed to her that the defendant had sexually assaulted her from when she was fourteen years old until she was seventeen years old and that the assaults took place at, among other places, the residence of H's father, at the defendant's residence and at the defendant's place of employment.

Next, H's father, A, testified that in the summer of 2000, H disclosed to him that the defendant had sexually assaulted her from when she was fourteen years old until she was sixteen years old and that the assaults took place at A's residence, at the defendant's residence, at the home of the defendant's mother-in-law and at the defendant's place of employment.

Next, G testified that when H was seventeen or eighteen years old, she told him that the defendant had sexually assaulted her in the defendant's home when she was fifteen years old.

Next, H's mother, D, testified that when H was nineteen years old, H told her that the defendant had "raped and molested" her at the defendant's residence when she was fourteen years old.

On November 1, 2002, after six constancy of accusation witnesses testified, the defendant again sought to preclude the constancy of accusation testimony of the remaining three constancy of accusation witnesses, arguing that it would be cumulative and prejudicial.

The court denied that motion and allowed the remaining three constancy of accusation witnesses to testify.

Thereafter, Stolarek, a state police trooper, testified that, on July 22, 2000, H told him that she had sexual intercourse with the defendant and that it had occurred at several places, including the defendant's residence and the defendant's place of employment. Stolarek further testified that in October, 2000, he brought H back to the state police barracks to see if she could report anything on more specific incidents. He testified that H told him that she had had sexual intercourse with the defendant at the defendant's home when she was fourteen years old.

Next, Cole, a licensed independent clinical social worker, testified that in August, 2000, H told her that the defendant had sexually assaulted H at his home when H was fourteen and fifteen years old.

Last, Payette, a state police trooper, testified that on October 16, 2002, H told him that the defendant had sexually assaulted her in November or December, 1995, when H was fourteen years old.

The court then instructed the jury that H's out-of-court statements that had been introduced through the nine constancy of accusation witnesses were not to be used as substantive evidence, but rather to corroborate or to impeach H's testimony. The court further noted that if the jury found that there had been a delay in H's reporting, it could use that evidence in evaluating her credibility.

We begin by setting forth our standard of review. "[W]hether evidence is admissible under the constancy of accusation doctrine is an evidentiary question that will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . An appellate

court will make every reasonable presumption in favor of upholding the trial court's evidentiary rulings." (Internal quotation marks omitted.) *State* v. *Francis D.*, 75 Conn. App. 1, 5, 815 A.2d 191, cert. denied, 263 Conn. 909, 819 A.2d 842 (2003).

"The rationale [behind the constancy of accusation doctrine] stems from the ancient belief that a victim of a violent crime would naturally cry out immediately after an assault and that, by implication, if such a victim did cry out, her complaint was more likely true. . . . That belief led to the corresponding supposition that a jury would treat with skepticism one who did not cry out soon after she was attacked. . . . So profound was the belief in that sociological phenomenon, and so entrenched was the distrust in a victim's delayed complaint, that proof of hue and cry became a formal prerequisite for the prosecution of any rape case. . . .

"With the advent of the hearsay rule in the early 1800s, an exception was carved out for those fresh complaints, partially as a means to dispel the jury's inclination to distrust the victim if there were a delay in reporting. . . . Its use thereby forestalled the inference that the victim's silence was inconsistent with her present formal complaint of rape. . . . In effect, the fresh complaint rule allowed a victim to testify that she had told others about an alleged sexual assault as anticipatory rebuttal against an attack on her credibility, either by the defendant or by the unspoken bias of jurors who, it was presumed, would tend to discredit a victim's claims unless she offered testimony that she had complained soon after the assault.

"The fresh complaint rule, in turn, spawned our current constancy of accusation doctrine. Accordingly, those to whom a victim purportedly made a complaint are permitted to testify that such a complaint was, in fact, made to them. That testimony is permitted to cor-

roborate the victim's testimony that she made such a complaint. . . .

"We recognize that contemporary empirical studies have discredited the fundamental assumption underlying the historical development of the fresh complaint and constancy doctrines, that it is natural for the victim of a sexual assault to complain promptly following an assault. . . . Accordingly, any delay between the time of the assault and the time of the victim's disclosure of it pertains to the weight of the constancy evidence rather than to its admissibility. . . . When . . . however, the constancy evidence is comprised of statements made after a complaint has been made to the police and the trial has commenced, we cannot conclude that the evidence has any value in supporting the victim's credibility or dispelling the suspicion of fabrication." (Citations omitted; internal quotation marks omitted.) *State* v. *John G.*, 80 Conn. App. 714, 728–30, 837 A.2d 829 (2004).

A

The defendant first argues that that the cumulative effect of the constancy of accusation testimony of Stolarek, Cole and Payette, viewed in light of the testimony of the first six constancy of accusation witnesses, substantially prejudiced the defendant.[4] We do not agree.

[4] The defendant also claims that the cumulative effect of the constancy of accusation testimony of Stolarek, Cole and Payette amounted to a constitutional violation and, because he failed to preserve this claim properly at trial, requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Regardless of how the defendant has framed the issue, however, he cannot clothe an ordinary evidentiary issue in constitutional garb to obtain appellate review. See *State* v. *Spiegelmann*, 81 Conn. App. 441, 451–52, 840 A.2d 69 (review of claim involving constancy of accusation testimony is evidentiary, not constitutional, in nature), cert. denied, 268 Conn. 921, 846 A.2d 882 (2004). Although this court will review an unpreserved constitutional claim if it satisfies *Golding*'s criteria, unpreserved evidentiary claims are not afforded the same protection.

"In excluding evidence on the ground that it would be only cumulative, care must be taken *not* to exclude merely because of an *overlap* with evidence previously received. To the extent that evidence presents new matter, it is obviously not cumulative with evidence previously received." (Emphasis in original; internal quotation marks omitted.) *State* v. *Parris*, 219 Conn. 283, 293, 592 A.2d 943 (1991).

Here, Stolarek testified about conversations he had with H in July and October, 2000, Cole testified about a conversation she had with H in August, 2000, and Payette testified about a conversation he had with H in October, 2002. Consequently, although their testimony overlapped in the sense that it related to the same incident, or discussion thereof, it pertained to different statements that H made to different persons at different points in time. The testimony was, therefore, not prejudicially cumulative. Rather, the testimony covered new matter by demonstrating, as is the constancy of accusation doctrine's primary purpose, that H previously had reported the incident she described on direct examination in a constant and consistent fashion. See id., 293–94. We therefore cannot conclude that the court abused its discretion by admitting the constancy of accusation testimony of Stolarek, Cole and Payette.[5]

B

The defendant next argues that he was prejudiced by the admission of constancy of accusation testimony from Cole and Payette because they both testified about

[5] The defendant also argues that "a child complainant's statements to the police or anyone else should be excluded because, being a child, a complainant would not be expected to make a fresh complaint, and, a victim's statement to the police should be excluded as a general rule because of the inherent prejudice of the admission of investigatory interview statements." In support of his argument, the defendant cites legal authority from Tennessee and New Jersey, and asks this court to adopt it. We, however, decline the defendant's invitation to adopt those precedents.

statements made to them by H after a report was made to the police. We do not agree.

"Under the current and long-standing state of the law in Connecticut, the burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant. The defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State v. DeJesus*, 260 Conn. 466, 485, 797 A.2d 1101 (2002).

Even if we assume arguendo that the testimony from Cole and Payette was admitted improperly because it did not relate to a "fresh complaint," we would conclude that it was harmless error and did not affect the outcome of the trial. We specifically note that the primary issue at trial was not whether the defendant and H had had a sexual relationship, but whether the sexual relationship occurred after H became sixteen years old. Consequently, because the testimony of Cole and Payette related to conversations they each had with H when she was sixteen years old or older, it provided no additional support for the state's position that the sexual relationship began prior to H's sixteenth birthday. As a result, any error in the admission of the testimony of Cole and Payette was harmless.

II

The defendant next claims that the court improperly suppressed and redacted certain records that the defendant argues would have led the jury to "entertain doubt of H's credibility." Specifically, the defendant argues that the court improperly conducted an in camera review of those documents and now asks this court to conduct its own in camera review. After conducting our own in camera review of those documents, we disagree with the defendant's claim.

"Our standard of review in determining whether a court properly conducted an in camera review of confi-

dential records is abuse of discretion. . . . On appeal, [t]his court has the responsibility to conduct its own in camera review of the sealed records to determine whether the trial court abused its discretion in refusing to release those records to the defendant. . . . While we are mindful that the defendant's task to lay a foundation as to the likely relevance of records to which he is not privy is not an easy one, we are also mindful of the witness' legitimate interest in maintaining, to the extent possible, the privacy of her confidential records. . . . The linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality . . . . Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis. . . .

"At this stage in the proceedings, when the court has reviewed the records in camera, access to the records must be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records." (Citation omitted; internal quotation marks omitted.) *State* v. *Gainey*, 76 Conn. App. 155, 158–59, 818 A.2d 859 (2003).

After closely examining each of the challenged records, we conclude that the court did not abuse its discretion in limiting access to the victim's confidential records or in redacting those records that it did disclose.

### III

The defendant next claims that the court abused its discretion by excluding certain exhibits from evidence. Specifically, the defendant claims that the court abused

its discretion by excluding from evidence (1) a note allegedly written by H to the defendant and (2) a voice recording of H's father. We do not agree.

We begin by setting forth our standard of review. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State v. Spiegelmann*, 81 Conn. App. 441, 448, 840 A.2d 69, cert. denied, 268 Conn. 921, 846 A.2d 882 (2004). Furthermore, "the burden to prove the harmfulness of an improper evidentiary ruling is borne by the defendant. The defendant must show that it is more probable than not that the erroneous action of the court affected the result." (Internal quotation marks omitted.) *State v. DeJesus*, supra, 260 Conn. 485.

A

The defendant first claims that the court abused its discretion by excluding a note allegedly written by H to the defendant. We do not agree.

The following additional facts and procedural history are relevant to the resolution of the defendant's claim. At trial, the defendant sought to prove his defense that his sexual relationship with H began after she became sixteen years old by introducing into evidence a note allegedly written by H to the defendant, which stated: "I love John Brisco . . . John Brisco love's [H]."

Outside the jury's presence, the defendant's wife, S, testified that in July, 1997, she found that note, which allegedly had been written by H. The defendant argued that he was not seeking to have the note admitted for its truth, but rather to determine when S understood that something was going on between him and H, which

was, he argues, critical to determining if the sexual relationship between him and H began after H became sixteen years old. The court disagreed, concluding that the note was inadmissible hearsay because it was too prejudicial and that it was not authenticated. S, however, was allowed to testify that she found the note and that on the basis of her having found the note, she confronted the defendant and H.

"Authentication is . . . a necessary preliminary to the introduction of most writings in evidence. . . . In general, a writing may be authenticated by a number of methods, including direct testimony . . . . [T]here need only be a prima facie showing of authenticity to the court. . . . Once a prima facie showing of authorship is made to the court, the evidence, as long as it is otherwise admissible, goes to the jury, which will ultimately determine its authenticity. . . . The only requirement is that there have been substantial evidence from which the jury could infer that the document was authentic." (Internal quotation marks omitted.) *State* v. *Ferraiuolo*, 80 Conn. App. 521, 535, 835 A.2d 1041 (2003), cert. denied, 267 Conn. 916, 841 A.2d 220 (2004); see also Conn. Code Evid. § 9-1.

Here, the defendant did not provide substantial evidence to prove either that H wrote the note or when the note was written. The only evidence the defendant provided in arguing that it was relevant to determining when the sexual relationship of the defendant and H began was S's testimony regarding when she found the note. That alone does not suffice because the defendant did not provide any further evidence suggesting that S had sufficient familiarity with H's handwriting to identify her as the note's author, nor did he provide adequate evidence as to when the note was written. Because the note was not authenticated properly, we cannot conclude that the court abused its discretion by not admitting it into evidence.

B

The defendant also claims that the court abused its discretion by excluding from evidence a tape recording of H's father, A. We do not agree.

The following additional facts and procedural history are relevant to the resolution of the defendant's claim. H's father, A, and A's sister, I,[6] had a disagreement over a real estate commission on their mother's estate. At trial, S, I, N, C and A all testified about that family dispute and A's feelings about that dispute. I specifically testified that she became aware of the problem A had with how their mother's estate was being handled when he left a message on her answering machine in September, 2000. The tape, played outside the jury's presence, contained the following statement by A: "But I'm—I'm upset with you people. I mean, geeze. Everything is for you, you guys only. You want me to drop charges for [H] cause old [S] can get better. What about [H]? What about my kid? Everything is about [you]. I'm sick of it. I am sick of it. . . ."

The defendant sought to admit that tape recording into evidence, arguing that in light of the fact that Stolarek, a state police trooper to whom H had first made an official statement, testified that H told him that it was A who had talked her into reporting what the defendant had been doing to her, the recording was admissible to show A's ulterior motive for bringing the charges.

The court excluded the recording from evidence because the issue of the family dispute already was before the jury, thereby making the admission of the recording cumulative and potentially raising the jury's emotions on a collateral issue. The court further noted that "this tape was made in September of 2000. The disclosure [to the state police trooper] was made in

---

[6] I is the defendant's mother-in-law.

July of 2000. [The tape] was made after the fact. And to try to show the jury that the father had an ulterior motive to have [H] bring this out in July, and allow that to be proven by a tape made three months after that, is not proper."

"As a general rule, [a]lthough relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Citation omitted; internal quotation marks omitted.) *State* v. *Finan*, 82 Conn. App. 222, 233–34, 843 A.2d 630, cert. granted on other grounds, 269 Conn. 901, 851 A.2d 304 (2004).

Here, the defendant had an opportunity to raise the issue of the family dispute with the jury through the testimony of several witnesses. Further, the family dispute clearly was collateral to the primary issue at trial of when the sexual relationship between the defendant and H began. The court reasonably determined that any further exploration of the issue of the family dispute would, therefore, create a risk that the jury's emotions would be raised improperly. For those reasons, and because of the timing of the recording in relation to H's complaint to the police, we cannot conclude that the court abused its discretion in excluding the recording from evidence because it was cumulative and potentially could have raised the jury's emotions.

IV

Last, the defendant claims that the court's granting of the state's motion in limine, excluding portions of H's diary from evidence, amounted to a violation of his constitutional right to confront witnesses testifying against him. Specifically, the defendant claims that the diary references to H having sexual intercourse with

someone other than the defendant prior to her sixteenth birthday were admissible notwithstanding the rape shield statute, General Statues § 54-86f, because those references offered proof of an alternative source of her sexual knowledge. We do not agree.

The following additional facts and procedural history are relevant to our resolution of the defendant's claim. On October 16, 2002, Payette, a state police trooper, seized H's diary. The diary contained references to H having had sexual intercourse with someone other than the defendant prior to H's sixteenth birthday. Specifically, the diary referenced her sexual relationship with a teenage boyfriend when she was younger than sixteen.

On October 25, 2002, the state sought to preclude the defendant from offering evidence of any of H's sexual conduct except that relating to the defendant, citing the rape shield statute, § 54-86f. It also sought to preclude the defendant from cross-examining H on that subject. The defendant objected, arguing that the diary contained information necessary to show an alternative source of the sexual knowledge H possessed at the age of fourteen or fifteen. The court rejected the defendant's argument, concluding that under the rape shield statute, the defendant could not introduce "any evidence of and [was precluded] from cross-examining the victim as to any sexual conduct of the victim except for that relating to the defendant in this case." The court further noted that "nothing has been offered or presented that is so probative and relevant so as to outweigh the prejudicial value and the effect of the evidence."

We begin by setting forth our standard of review. "The trial court has wide discretion in determining the relevancy of evidence and the scope of cross-examination and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of

discretion. . . . To establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial." (Internal quotation marks omitted.) *State* v. *Rolon*, 257 Conn. 156, 173, 777 A.2d 604 (2001).

"It is well established that a defendant has the right to confront witnesses against him as guaranteed by the confrontation clauses of both our federal and state constitutions. . . . [T]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." (Citations omitted; internal quotation marks omitted.) Id., 174–75. "We are mindful, however, that the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." (Internal quotation marks omitted.) Id., 175. "[I]n cases involving sexual crimes, [t]he rape shield statute . . . was enacted specifically to bar or limit the use of prior sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material." (Internal quotation marks omitted.) Id., 176.

Here, the defendant argues that changes in H's behavior and personality did not arise from sexual intercourse with him prior to when she became sixteen years old, but rather arose from sexual intercourse with her teenage boyfriend, who was referenced in her diary. In support, the defendant cites *State* v. *Rolon*, supra, 257 Conn. 182–84, which provides a test for determining when a defendant has a "constitutional right to present otherwise excluded evidence of a child complainant's prior sexual conduct for the limited purpose of proving an alternative source for sexual knowledge . . . ." (Internal quotation marks omitted.) Id., 183. "[P]rior to trial

the defendant must make an offer of proof showing: (1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to [the] defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect." (Internal quotation marks omitted.) Id., 183–84.

The defendant's reliance on *Rolon* and the test contained therein, however, is misplaced. In *Rolon,* the victim was sexually abused beginning when she was eight months old until she was five years old. Id., 161–62. The defendant in *Rolon* sought to introduce evidence that the victim was sexually abused by someone other than the defendant to show an alternative source of the young victim's sexual knowledge. Id., 172–73. In allowing the evidence of the victim's prior sexual conduct, *Rolon* distinguished *State* v. *Kulmac,* 230 Conn. 43, 644 A.2d 887 (1994), which affirmed a trial court's exclusion of such evidence of prior sexual abuse. The court in *Rolon* noted that "the victims in *Kulmac* were ages fourteen and fifteen at the time of trial . . . an age at which most young adults are less likely to be confused over an individual's identity and are capable of understanding matters of a sexual nature. . . . [T]he victims were old enough to understand and clearly articulate the identity of their abuser." (Citations omitted.) *State* v. *Rolon,* supra, 257 Conn. 180–81.

Here, unlike the situation in *Rolon,* in which the victim was five years old or younger when she was abused, H was fourteen and fifteen when the abuse occurred and twenty-one years old when she testified at trial. She clearly was at an age when the source of her sexual knowledge was not an issue. Additionally, we note that the defendant does not argue that the diary should be admitted into evidence because of confusion over the identity of H's abuser, as seen in *Rolon* and *Kulmac.*

Rather, the defendant argues merely that it should have been admitted to support his argument that changes in H's behavior and personality did not arise from her having had sexual intercourse with him, but rather from her having had sexual intercourse with the person referenced in her diary. Such an argument does not fit into the exception to the rape shield statute set forth in *Rolon.* For those reasons, we cannot conclude that the court abused its discretion in excluding H's diary from evidence.[7]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] The defendant also claims that the improper exclusion from evidence of (1) the note, (2) the tape recording, (3) the treatment records and (4) the diary viewed cumulatively amounted to a violation of his constitutional right to a fair trial. Because we already have concluded that the court properly excluded from evidence each of those four items, the defendant's claim must fail. "[T]he right to present a defense does not include the right to offer evidence that is incompetent, irrelevant or otherwise inadmissible. . . . Every evidentiary ruling that denies a defendant a line of inquiry to which he thinks he is entitled is not constitutional error." (Internal quotation marks omitted.) *State* v. *L'Minggio,* 71 Conn. App. 656, 661, 803 A.2d 408, cert. denied, 262 Conn. 902, 810 A.2d 270 (2002).