# STATE OF CONNECTICUT *v.* GLEN S. JACKSON
## (AC 24141)

Lavery, C. J., and Schaller and Dupont, Js.

Argued September 22, 2004—officially released January 11, 2005

*Brian J. Woolf,* for the appellant (defendant).

*Margaret Gaffney Radionovas,* senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky,* state's attorney, and *Elizabeth C. Leaming,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The issues in this appeal from the judgment of conviction of various sex related offenses concern whether (1) the admission, in the aggregate, of the testimony of constancy of accusation witnesses and (2) the nondisclosure to the defendant of records of the department of children and families (department) deprived him of his state and federal constitutional rights to a fair trial or to cross-examine the victim by use of exculpatory information.

The defendant, Glen S. Jackson, was charged in a seven count information with four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A), one count of impairing the morals of a child in violation of General Statutes § 53-21 (a) (2) and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1). The jury found the defendant guilty as to all seven counts. The defendant received a total effective sentence of fifteen years incarceration, followed by thirty years of special parole, with lifetime registration as a sex offender. We affirm the judgment of the trial court.

## I

## BACKGROUND

The jury reasonably could have found the following relevant facts. Born in February, 1988, the victim, K,[1] lived with her mother, J, her younger brother and the defendant during the period between November, 2000, and January, 2001. At the time of the crimes for which the defendant was convicted, K was twelve years old.

On September 15, 2000, J met Colby Gardner. Soon thereafter, J met the defendant, who was Gardner's cousin. A social relationship quickly developed between J and the defendant and, in October, 2000, she invited him to move into her home where he could assist in paying the bills. The defendant accepted and, in October, 2000, moved into J's home, using the family room as his bedroom.[2] In November, 2000, Gardner also moved into J's home for approximately one week.[3]

K began to develop a relationship with the defendant because she often used his room, the family room, to watch television and to socialize with friends. K's first physical interaction with the defendant involved him touching her leg and vagina over her clothes with his hand. Surprised by the defendant's actions, K did not respond. Subsequent to that first interaction, the defendant and K engaged in multiple sexual encounters involving penile and digital penetration, fellatio, cunnilingus and, on one occasion, a threesome with K's six-

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] J and the defendant never had any sexual relationship.

[3] At the time of the trial that is the subject of this appeal, Gardner had been convicted of sexual assault in the first degree and risk of injury to a child in connection with his sexual involvement with K and was awaiting sentencing. Gardner agreed to testify truthfully in the defendant's trial regarding his knowledge of the defendant's sexual relationship with K in exchange for a more favorable sentence.

teen year old friend, L. K first engaged in sexual intercourse with the defendant on December 6, 2001, and subsequent to that date, they engaged in sexual activity, including intercourse, nearly every night until her mother discovered the relationship in early January, 2002. K kept a personal diary in which she recorded many of the details of her relationship with the defendant.

On or about January 3, 2002, J learned from L's mother, W, that K had been involved in a sexual relationship with the defendant. After initially denying the accusation, K eventually admitted to her mother that she and the defendant had been engaged in a sexual relationship. Attempting to keep herself and the defendant out of trouble, K minimized her relationship with the defendant, stating to her mother that she and the defendant had engaged in intercourse on only one occasion. K's mother learned of the full scope of her daughter's involvement with the defendant when she discovered and read her daughter's diary. K's mother then notified the police. Additional facts will be set forth as necessary.

II

CONSTANCY OF ACCUSATION WITNESSES

K and twelve other persons testified at trial. Eight witnesses are described as constancy of accusation witnesses by the defendant in his brief, namely, J; C, who was a friend K; L; W; Gardner; Joseph Kozachek, a physician with training in pediatric sexual assault examinations; police Lieutenant Nancy Gillon; and Steven Davies, a psychotherapist. A constancy of accusation witness is one in whom the complaining witness in a sexual assault case has confided about the assault. See *State* v. *Samuels*, 75 Conn. App. 671, 675–76, 817 A.2d 719, cert. granted on other grounds, 263 Conn. 923, 823

A.2d 1216 (2003). Such a witness may testify about that confidence as an exception to the hearsay rule for the limited purpose of showing that such a complaint was made, with the testimony to be limited to details necessary to associate the victim's complaint with the pending charge, including, for example, the identity of the perpetrator or the time and place of the attack.[4] *State v. Troupe*, 237 Conn. 284, 304–305, 677 A.2d 917 (1996).

Prior to the commencement of trial, the defendant filed motions in limine to preclude the use of corroborative statements made by K to L, W and J. Those motions were denied. The defendant also filed a motion in limine with respect to Gardner, which also was denied. That motion was not based, however, on the use of Gardner's testimony as corroborative of K's testimony. In its charge to the jury, the court referred to seven witnesses as having testified about out-of-court statements that K had made to them regarding the defendant's sexual assaults of her.[5] In order to evaluate the defendant's claim that in the aggregate, the testimony of constancy of accusation witnesses deprived him of a fair trial, we first must discuss which witnesses properly can be characterized as such.

[4] See Conn. Code of Evidence § 6-11 (c), which provides in relevant part: "Constancy of accusation by a sexual assault victim. A person to whom a sexual assault victim has reported the alleged assault may testify that the allegation was made and when it was made, provided the victim has testified to the facts of the alleged assault and to the identity of the person or persons to whom the assault was reported. Any testimony by the witness about details of the assault shall be limited to those details necessary to associate the victim's allegations with the pending charge. The testimony of the witness is admissible only to corroborate the victim's testimony and not for substantive purposes."

[5] Seven of the eight witnesses the court named were the same as those named by the defendant in his brief. The defendant included W, whereas the court did not. In light of the definition of a constancy of accusation witness, however, W was a constancy of accusation witness because she testified as to statements K made to her concerning K's sexual involvement with the defendant.

K testified that before the police became involved, Gardner and L[6] were the only people she had told about her sexual relationship with the defendant. She also testified, however, that she eventually told J and W, but could not remember if she ever told C about her involvement with the defendant.[7]

The defendant argues that the court improperly admitted the testimony of several of the state's witnesses under the constancy of accusation doctrine, contrary to the holdings of *Troupe* and *Samuels.* Specifically, the defendant argues that (1) K's testimony provided an insufficient predicate for the admission of the corroborative testimony of C, L, W, J and Gardner, and (2) although an improper admission of the testimony of each separate constancy of accusation witness might have been harmless error and might not, alone, have created such substantial prejudice to the defendant to warrant a reversal of the judgment, the evidence in the aggregate, served to deprive him of a fair trial.[8] As to the second claim, the defendant seeks review

---

[6] L was arrested as a youthful offender and charged with risk of injury to a child for allegedly engaging in a sex act while a minor, K, was present. L was part of the threesome, including the defendant.

[7] The court permitted the testimony of C regarding statements K allegedly made to her concerning her sexual involvement with the defendant. At trial, however, the defendant objected only to the scope of the testimony, not that a sufficient foundation for the testimony had not been established. We will treat this issue, therefore, as an unpreserved evidentiary claim.

[8] The defendant makes the argument about the denial of a fair trial due to the aggregate of the testimony of the witnesses for the first time on appeal. *Samuels*, which discusses such a claim, was not officially released until after the defendant's trial had concluded. He did, however, make the argument at his motion for a new trial, and his argument was considered by the court in its denial of that motion on April 4, 2003. The defendant does not challenge the denial of the motion on appeal. During the hearing on the motion, the defendant conceded that the court properly admitted the constancy of accusation testimony of L. The defendant remarked that "[f]urther on in the case, there may have been some testimony that [K] did talk [to L about her relations with the defendant]. So, I don't think I am actually going to challenge [L]."

under the guidelines set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In addition, the defendant argues that Kozachek, the physician who examined K after her mother had reported the assaults, was barred from giving constancy of accusation testimony by *Samuels* because K had made the statements in question after the complaint of the sexual assaults had been made to the police department. The defendant properly objected to the constancy of accusation testimony through a motion in limine with respect to three witnesses,[9] L, W and J. The defendant concedes that L's testimony was admitted properly. See footnote 8.

Whether testimony was admitted properly under the constancy of accusation doctrine is an evidentiary question. "[E]videntiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Alvarez*, 216 Conn. 301, 306, 579 A.2d 515 (1990); see *State* v. *Pereira*, 72 Conn. App. 107, 117, 806 A.2d 51 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003). "Where evidentiary error is claimed, the defendant bears the burden of proving the harmfulness of the error before a new trial will be granted." (Internal quotation marks omitted.) *State* v. *Billie*, 47 Conn. App. 678, 685,

---

[9] The defendant filed several motions in limine to preclude the introduction of evidence. In addition to motions to preclude corroborative evidence from W, L and J, were motions to preclude any evidence concerning (1) sounds emanating from behind a closed door of a room in which the victim and the defendant were, K's not wearing underwear on one occasion and the flushed appearance of K on another occasion, and (2) a written statement by J involving an out-of-court declaration by the defendant and speculation as to the state of mind of another person. All of the defendant's motions were denied. The denial of the defendant's motions in limine that were based on his objections to the testimony of some witnesses as constancy of accusation witnesses obviated the need for him to object to the testimony at trial in order to preserve the issue for appeal. See *Sokolowski* v. *Medi Mart, Inc.*, 24 Conn. App. 276, 280, 587 A.2d 1056 (1991).

707 A.2d 324 (1998), aff'd, 250 Conn. 172, 738 A.2d 586 (1999).

In *Troupe*, our Supreme Court narrowed the scope of the constancy of accusation doctrine. The court held that "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. . . . Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported." *State* v. *Troupe*, supra, 237 Conn. 304–305.

The defendant claims that the court improperly admitted testimony of two of the state's constancy of accusation witnesses, W[10] and J, because K did not first testify as to any statements she made to those people in connection with the sexual assaults. See id.

Our review of the record indicates otherwise. On direct examination, K testified about J's discovery of K's relationship with the defendant. K testified that in early January, 2001, she, L, W and J were gathered at her house. K testified that W informed J of the sexual relationship between K and the defendant. K further testified that after being encouraged by J and W to tell the truth, K admitted that she had been engaged in a sexual relationship with the defendant. The record indicates, therefore, that K did testify as to the fact of

[10] Although the court did not consider W as a constancy of accusation witness, the defendant correctly asserts that she was one. See footnote 5.

the sexual assaults, the identity of her assailant and the persons to whom she had reported that information. We conclude, therefore, that the court did not abuse its discretion in admitting the constancy of accusation testimony of J and W.

We next consider the defendant's claim that the constancy of accusation testimony, taken in the aggregate, deprived him of a fair trial.[11]

This court repeatedly has stated that "[w]hether evidence is admissible under the constancy of accusation doctrine is an evidentiary question that will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . An appellate court will make every reasonable presumption in favor of upholding the trial court's evidentiary rulings." (Internal quotation marks omitted.) *State* v. *Francis D.*, 75 Conn. App. 1, 5, 815 A.2d 191, cert. denied, 263 Conn. 909, 819 A.2d 842 (2003); see also *State* v. *Brisco*, 84 Conn. App. 120, 126–27, 852 A.2d 746 (2004). "It is well settled that unpreserved evidentiary claims will not be reviewed under *Golding*." *State* v. *Warren*, 83 Conn. App. 446, 451, 850 A.2d 1086, cert. denied, 271 Conn. 907, 859 A.2d 567 (2004). Our Supreme Court has stated that "once identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed." *State* v. *Golding*, supra, 213 Conn.

---

[11] That claim focuses on the constancy of accusation testimony in the aggregate. Although the defendant claims on appeal that under our holding in *Samuels*, constancy of accusation testimony is limited to accusations made by a complaining witness before an official complaint is made to the police; *State* v. *Samuels*, supra, 75 Conn. App. 685; the admissibility of each individual's constancy of accusation testimony is irrelevant. Even if the court improperly admitted constancy of accusation testimony of C, Gillon, Davies and Kozachek, the admission of each would be harmless error when considered individually under the precepts of *Troupe* and *Samuels*. We need only determine, therefore, whether the constancy accusation testimony, taken in the aggregate, deprived the defendant of a fair trial.

241. "We previously have held that *Golding* does not apply to evidentiary claims, which, standing alone, do not rise to the level of constitutional magnitude that is required by *Golding*'s second prong." *State* v. *Spiegelmann*, 81 Conn. App. 441, 451, 840 A.2d 69, cert. denied, 268 Conn. 921, 846 A.2d 882 (2004).

The defendant relies, however, on *Samuels* in contending that his claim is entitled to *Golding* review. In *Samuels*, we held that the improper admission of testimony of constancy of accusation witnesses, in the aggregate, deprived the defendant of a fair trial.[12] *State* v. *Samuels*, supra, 75 Conn. App. 690. Noting that "[t]he improper admission of the testimony of each constancy of accusation witness . . . was harmless and did not, alone, create such substantial prejudice to the defendant as to warrant a reversal of the judgment;" id.; we nevertheless concluded that "the testimony is part of a mosaic of improperly admitted evidence that, in the aggregate, served to deny the defendant a fair trial." Id. "Whether the claim of a denial of a fair trial is of constitutional dimension is guided by whether the claim rests on a factual matrix that is within the mainstream of due process adjudication." Id., 692.

The defendant's reliance on *Samuels* is misplaced. Although we extended *Golding* review to the defendant's constancy of accusation claim in *Samuels*, hold-

---

[12] The defendant in *Samuels* was afforded *Golding* review because he raised a constitutional claim, not previously made at trial, that the cumulative effect of improperly admitted constancy of accusation testimony deprived him of a fair trial. *State* v. *Samuels*, supra, 75 Conn. App. 688. He had objected during his trial to the introduction of the testimony of seven constancy of accusation witnesses on the ground that three of them were told of the assault after the complaining witness had made her formal complaint to the police and also because the victim had not testified that she had told two of the witnesses about the defendant's assaults. Id., 677. The seven witnesses were a friend, an uncle, a therapist, two schoolteachers and two police officers. Id., 673 n.5. The *Samuels* court did not discuss, individually, the testimony of one relative or of the two police officers.

ing that improper admission of the testimony of four constancy of accusation witnesses, cumulatively, deprived the defendant of a fair trial, *Samuels* is distinguishable from the present case.

In reaching our conclusion in *Samuels*, we focused on several factors that are not present in this case. For example, in *Samuels*, the trial court improperly admitted the testimony of four out of seven of the state's constancy of accusation witnesses, and the state relied heavily on that testimony in its evidentiary presentation and in closing argument. We further observed that the lack of a constancy of accusation limiting instruction to the jury increased the potential for harm. Id., 694.

In this case, the state's case against the defendant centered on K's in-court testimony and the eyewitness testimony of other witnesses corroborating the events about which K testified. L and C were eyewitnesses or participants in the events surrounding the crimes, and their testimony was not needed to corroborate K's accusation testimony. The state's closing argument to the jury focused primarily on K's testimony and the irrationality of the defense of recent fabrication advanced by the defendant. Finally, and perhaps most significantly, in the present case, unlike *Samuels*, the court gave the jury a constancy of accusation limiting instruction.[13] In

[13] The following is an excerpt from the court's limiting instruction on constancy of accusation testimony: "This evidence by each witness is admitted solely—and remember this—solely to corroborate or not corroborate [the victim's] testimony in court. These out-of-court statements are to be considered by you only in determining the weight and credibility you will accord her testimony given here in court. Remember, it's the testimony in court that you have to rely on. The evidence of the out-of-court statement by her of a sexual assault against her by the defendant is not to be considered by you to prove the truth of the matter asserted in those out-of-court statements.

"In determining whether these out-of-court statements are corroborative or not corroborative of [the victim's] testimony in court, you should consider all the circumstances under which they were made and to whom. You may also consider whether the statements made to these persons were or were not consistent with her testimony in court. If you find any delay in her

fact, in response to a question from the jury during deliberations, the court repeated that limiting instruction.[14] On the facts of this case, we conclude that any constancy of accusation testimony of C, Davies, Kozachek and Gillon that may have been admitted improperly was not part of a mosaic of improperly admitted evidence that, as a whole, served to deny the defendant a fair trial. See *State* v. *Samuels*, supra, 75 Conn. App. 690. The defendant's claims in this case merely are evidentiary in nature, do not rise to the level of constitutional magnitude and, therefore, fail to satisfy the second prong of *Golding*. See *State* v. *Spiegelmann*, supra, 81 Conn. App. 451.

## III

## DEPARTMENT RECORDS

The defendant next contends that the court abused its discretion in precluding the disclosure of confidential school records and files of the department relating to K in violation of his due process rights guaranteed by the United States and Connecticut constitutions. We do not agree.

At trial, defense counsel subpoenaed department records relating to K, which the court reviewed in camera. The court thereafter denied the defendant access to the records, stating that "there is nothing exculpatory. There is nothing showing dishonesty by the alleged victim in this case . . . . There is nothing showing anything that I could view in any way being helpful to the

reporting the alleged incidents, you may consider such delay and any reasons which you may find for such delay in evaluating her testimony here in court. To the extent that you find that what she has said outside the courtroom is consistent with her testimony in court, you may find her testimony in court to be corroborated or supported."

[14] The court stated in relevant part: "I just want to remind you that constancy of accusation witnesses are simply for corroboration only. They are not—it's not to prove the truth of the statements made to them out of court by the alleged victim."

defendant in this case."[15] Thereafter, the court ordered the department records sealed and made part of the record.

On appeal, the defendant asks that we review those confidential records to determine whether the information therein contains material that is subject to disclosure under *Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

"It is well established that [a] criminal defendant has a constitutional right to cross-examine the state's witnesses, which may include impeaching or discrediting them by attempting to reveal to the jury the witnesses' biases, prejudices or ulterior motives, or facts bearing on the witnesses' reliability, credibility, or sense of perception. . . . Thus, in some instances, otherwise privileged records, like the ones in this case, must give way to a criminal defendant's constitutional right to reveal to the jury facts about a witness' mental condition that may reasonably affect that witness' credibility. . . .

"We are mindful, however, that the right to confront and to cross-examine is not absolute and may, in appro-

---

[15] The court stated further, in relevant part, that "[t]here's no recantation. There are no allegations of hallucinations by [the victim] or fantasizing the relationship or anything of the sort. In fact . . . if anything, the documents I reviewed during that time frame would be in the nature of constancy evidence, if it was allowed at all. I also note that during that time frame, there were many documents in the [department] files that were, in fact . . . police department statements, and I've been told throughout this proceeding by both counsel at different times that the state has turned over the statements from the . . . police department to the defense.

"So, even though they're there, and there could theoretically be some bits of information in there that might be helpful to the defendant, the defendant already has all those documents, many of which were familiar to me when I saw them. Based upon the questioning that I heard, it was quite clear to me that the statements counsel were using to refresh their recollection of witnesses were the statements I was finding in this file. There were also some photocopies of pages of the diary, but again, the language that I saw was language I had heard during the trial, indicating to me that it was one and the same . . . ."

priate cases, bow to accommodate other legitimate interests in the criminal trial process. . . . The need to balance a witness' statutory privilege to keep psychiatric records confidential against a defendant's rights under the confrontation clause is well recognized. . . . The test and the associated burdens imposed on a defendant are equally well chronicled. If, for the purposes of cross-examination, a defendant believes that certain privileged records would disclose information especially probative of a witness' ability to comprehend, know or correctly relate the truth, he may, out of the jury's presence, attempt to make a preliminary showing that there is a reasonable ground to believe that the failure to produce the records would likely impair his right to impeach the witness. . . . If in the trial court's judgment the defendant successfully makes this showing, the state must then obtain the witness' permission for the court to inspect the records in camera. A witness' refusal to consent to such an in camera inspection entitles the defendant to have the witness' testimony stricken. . . .

"Upon inspecting the records in camera, the trial court must determine whether the records are especially probative of the witness' capacity to relate the truth or to observe, recollect and narrate relevant occurrences. . . . If the court determines that the records are probative, the state must obtain the witness' further waiver of his privilege concerning the relevant portions of the records for release to the defendant, or have the witness' testimony stricken. If the court discovers no probative and impeaching material, the entire record of the proceeding must be sealed and preserved for possible appellate review. . . . Once the trial court has made its inspection, the court's determination of a defendant's access to the witness' records lies in the court's sound discretion, which we will not disturb unless abused. . . .

"[T]he linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality and disclosing them to the defendant in order to protect his right of confrontation. . . . It bears emphasis [however] that any limitation on the impeachment of a key government witness is subject to the most rigorous appellate review." (Citations omitted; internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 379–81, 857 A.2d 808 (2004).

After a careful review of the records at issue, we conclude that they do not contain exculpatory or impeachment evidence or evidence relating to K's ability to comprehend, know and correctly relate the truth. Accordingly, we conclude that the court did not abuse its discretion in denying the defendant access to the records.

The judgment is affirmed.

In this opinion the other judges concurred.