STATE OF CONNECTICUT *v.* RICHARD W.[1]
(AC 28755)

Lavine, Beach and Borden, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued February 3—officially released June 16, 2009

*Darcy McGraw*, special public defender, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, and *Kimberley N. Perrelli*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Richard W., appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (1), and risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that (1) there was insufficient evidence to establish that he was guilty beyond a reasonable doubt of attempt to commit sexual assault in the first degree, (2) he was prejudiced by prosecutorial impropriety, (3) his right to due process was violated by expert witness testimony as to the ultimate issue and (4) the state violated his state and federal constitutional rights by failing to disclose exculpatory information as required

by *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At the time of the first incident giving rise to the charges in this case, the victim lived with the defendant, who is her father, and her mother and brother. One night soon after Christmas, 2002, the then thirteen year old victim was lying in bed when the defendant came into her room staggering, approached her bed and separated the top and bottom of her pajamas, exposing the victim from her knees to her chest. The victim attempted to "wiggle away," but she did not call out because she did not want to get into trouble. She also tried to keep her pajamas on. After the defendant had separated the victim's pajamas, he lowered his trousers to mid-thigh, exposing himself to the victim, and attempted to get into bed with her. When the victim turned away, the defendant pinned her to the bed, lost his balance and fell on the victim. The victim heard a cracking noise in her back and felt extreme pain. When the defendant pushed himself up, the victim was able to free her legs. She tucked her legs to her chest and used her feet to push the defendant away from her. The defendant fell to the floor, striking his head on a piece of furniture. The defendant began to scream and swear. The victim covered herself, fearing that the defendant would approach her again. The victim's mother came into the room and asked what had happened. The defendant stated that he had tripped and fallen and complained about the victim's messy room. The victim did not say anything to her mother about the defendant's behavior because she was scared and confused by the incident; having seen male genitalia for the first time, she felt violated.

The victim continued to suffer pain in her back, her legs felt numb and she had difficulty walking. The victim

began to worry, and one month after the incident, she told her mother that her back hurt. Her mother took the victim to her pediatrician, Roberta Lockhart, who referred her to an orthopedic surgeon, James Marsh. Marsh was concerned that the victim not sustain any more damage to her back and ordered that she be taken out of school. The victim stayed at home with the defendant, who was not working, for approximately six months. With the exception of the four hours of tutoring she received daily, the victim remained locked in her bedroom until her mother returned from work. The defendant banged on the door of the victim's bedroom and yelled until he gave up and went away. When the victim's mother returned, the victim and the defendant pretended that everything was "normal" and that "nothing had happened." The victim barely slept at night for fear of "what may happen [to her] if [the defendant]" came into her room.

Marsh had prescribed Vicodin for the victim's pain. At some time late in her freshman year of high school and into her sophomore year, the victim abused Vicodin. She did so because it made her "feel better" and she did not "have to care" about what the defendant was doing to her. The victim's cousin became concerned about the victim's abuse of Vicodin and alerted the victim's mother, and the two of them confronted the victim. The victim admitted that she was abusing the drug and agreed to treatment. In September, 2004, the victim spent five days in an inpatient treatment center and received outpatient treatment for several months thereafter. As a result of her back injury and drug abuse, the victim went from being an honors student and athlete to a failing student who had to repeat the tenth grade. She also started cutting herself. After receiving treatment, the victim was able to stop using drugs. At the time of trial, she had been drug free for two years.

During the course of these events, the victim's parents argued constantly. In early 2005, the defendant moved from the family home into an apartment, where the victim and her brother visited the defendant regularly. During one such visit in April or May, 2005, the defendant approached the victim while she was pretending to sleep on the couch. He grabbed the victim's crotch, causing her to open her eyes and exclaim, "What the hell do you think you're doing?" The victim pushed the defendant away from her. The defendant shouted, "You're a whore. You're a bitch. I never touched you." The defendant stormed off to his room where he remained until the victim's mother called for her.

The victim visited the defendant only once more after this incident because she was scared for her brother and did not want him to be alone with the defendant. During the visit, the defendant argued with the victim and her brother. The victim's brother wanted to leave, but the defendant would not permit them to use the telephone. The victim and her brother walked to the home of the victim's boyfriend, where they telephoned their mother. The victim refused to visit the defendant again.

On June 11, 2005, the victim's mother told her that she had to visit the defendant on Father's Day. The victim was fearful of what might happen because she had not spoken to the defendant in almost two months, and she knew "he was [going to] be angry." Faced with the prospect of seeing the defendant again, the victim told her mother of the defendant's sexual abuse. The victim's mother took her to the police station immediately. The victim spoke with Benjamin Trabka, a youth officer detective. The victim also was interviewed at the New Haven police station and was examined by professionals at the child sex abuse clinic at Yale-New Haven Hospital. At the police station and at the hospital,

the victim disclosed that the defendant had abused her sexually.

On June 12, 2005, Trabka and Detective John Hubyk spoke with the defendant at his home. Initially, the defendant denied touching the victim inappropriately. The defendant stated that he was an insomniac and took Ambien, and that maybe the Ambien caused him not to remember things he did at night. Eventually, the defendant was able to recall that he had gone into the victim's bedroom one night and touched her breasts. The defendant expressed concern that his behavior might have led to the victim's addiction to painkillers and asked if he could apologize to her. Trabka told the defendant that he could not speak to the victim but that he could write her a note, which Trabka would deliver to her. The defendant wrote a note, which was placed into evidence.[2]

The defendant was arrested and charged in a six count information. After the jury found the defendant guilty of attempt to commit sexual assault and risk of injury to a child, the court sentenced him to twelve years of incarceration, execution suspended after five years, and ten years of probation with special conditions, including ten years of sex offender registration. The defendant appealed. Additional facts will be discussed as needed.

I

We will address the defendant's first and second claims together, as they are intertwined. Briefly stated, the defendant claims that the state failed to produce evidence pursuant to which the jury could have found

---

[2] In the note, the defendant stated: "[Victim] I truly am sorry that I touched you inappropriately while you were trying to sleep! I will do whatever possible to make sure that this never happens again! Including the ambian and consoleing! [Victim] I miss you very much and I love you with my whole Heart. [Victim] please forgive me! Please. Love Dad"

beyond a reasonable doubt that he was guilty of attempt to commit sexual assault in the first degree. The crux of the claims is that due to the prosecutor's impropriety in (1) failing to put into evidence the victim's medical records that the defendant claims do not support the victim's testimony that he injured her back when he fell on her as she lay in bed in 2002 and (2) arguing to the jury that the defendant injured the victim's back, the defendant was denied due process of law that lessened the state's burden of proof. The defendant's claims lack merit.

The following procedural history is relevant to the defendant's claim. On December 12, 2006, the state filed a six count substitute information against the defendant. In count one of the information, the state alleged that "on or about December 2002 through January 2003, [the defendant] did, under the circumstances as he believed them to be, an act constituting a substantial step in a course of conduct planned to culminate in compelling another person to engage in sexual intercourse by the use of force against such person in violation of [§§ 53a-49 (a) (2) and 53a-70 (a) (1)]." The jury found the defendant guilty of counts one and six[3] and not guilty of counts two through five.[4] Thereafter, the

[3] In count six of the information, the state alleged that "on or about April through May 2005, [the defendant] had contact with the intimate parts, as defined in [General Statutes § 53a-65], of a child under the age of sixteen years, in a sexual and indecent manner likely to impair the health or morals of such child, in violation of [General Statutes § 53-21 (a) (2)]."

[4] The jury found the defendant not guilty of the following charges:

Count two: "[O]n or about June 2003, [the defendant] compelled another person to engage in sexual intercourse by the use of force against such person in violation of [General Statutes § 53a-70 (a) (1)]."

Count three: "[O]n or about June 2003, [the defendant] did have contact with the intimate parts as defined in . . . [General Statutes § 53a-65] of a child under the age of sixteen years, in a sexual and indecent manner likely to impair the health or morals of such child, in violation of [General Statutes § 53-21 (a) (2)]."

Count four: "[O]n or about January 2004, [the defendant] compelled another person to engage in sexual intercourse by the use of force against such person in violation of [General Statutes § 53a-70 (a) (1)]."

defendant filed a motion to set aside the verdict, claiming that the verdict was inconsistent. The court denied the motion.

The defendant failed to preserve the claims he now raises and seeks to have his conviction reversed pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We will review the defendant's claims because the record is adequate for our review and his claims are of a constitutional magnitude. See *State* v. *Brown*, 90 Conn. App. 835, 838, 879 A.2d 466 (defendant found guilty on basis of insufficient evidence deprived of constitutional right), cert. denied, 276 Conn. 901, 884 A.2d 1026 (2005); see also *State* v. *Skidd*, 104 Conn. App. 46, 64, 932 A.2d 416 (2007) (prosecutorial impropriety of constitutional magnitude can occur in final argument). The defendant's claims fail under the third *Golding* prong, however, because the constitutional violations do not clearly exist, and the defendant was not deprived of a fair trial.

"Review of any claim of insufficiency of the evidence introduced to prove a violation of a criminal statute must necessarily begin with the skeletal requirements of what necessary elements the charged statute requires to be proved." *State* v. *Pommer*, 110 Conn. App. 608, 613, 955 A.2d 637, cert. denied, 289 Conn. 951, 961 A.2d 418 (2008). "Once analysis is complete as to what the particular statute requires to be proved, we then review the evidence in light of those statutory requirements. Our review standard is well settled. In accordance with well established principles, appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task. We first review the evidence presented

---

Count five: "[O]n or about January 2004, [the defendant] had contact with the intimate parts, as defined in [General Statutes § 53a-65], of a child under the age of sixteen years, in a sexual and indecent manner likely to impair the health or morals of such child, in violation of [General Statutes § 53-21 (a) (2)]."

at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) Id.

General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does . . . anything which, under the circumstances as he believes them to be, is an act . . . constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person . . . ."

On the basis of our review of the evidence, we conclude that there was sufficient evidence pursuant to which the jury could have found that the defendant entered the victim's bedroom while she was lying in her bed, removed the victim's pajamas so as to expose her from her knees to her chest and exposed his genitals. As the victim sought to resist the defendant's efforts, the defendant got onto the victim's bed as the victim turned away from him. The defendant restrained the victim on her bed and moved over the victim until he lost his balance and the victim was able to push him away. On the basis of this evidence, the jury reasonably could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt of attempt to commit sexual assault in the first degree.

The defendant claims that the evidence was insufficient because the victim was not a credible witness. The basis of the defendant's claim is that there was no medical evidence to substantiate her testimony that her back was injured when the defendant fell on her. Although the victim's pediatrician testified about examining the victim for back pain and referring her to an orthopedic surgeon, none of the victim's medical records was placed in evidence. Proof of injury to the victim's back at the time the defendant attempted to assault her sexually is not an element of the crime of attempt to commit sexual assault in the first degree. Inasmuch as the defendant's claim concerns the victim's credibility, it is well established that appellate courts do not reverse criminal convictions on the basis of credibility determinations made by a jury that has had the opportunity to hear and to observe witnesses. *State* v. *Smith*, 110 Conn. App. 70, 78, 954 A.2d 202, cert. denied, 289 Conn. 954, 961 A.2d 422 (2008).

The defendant attempts to bootstrap his claim of evidentiary insufficiency by claiming that the prosecutor was guilty of impropriety in failing to put a medical record written by Marsh into evidence[5] and making an argument for which there was no medical evidence in the record, thereby lessening the state's burden of proof. The defendant claims that the prosecutor had a duty to put Marsh's medical records into evidence because, the defendant asserts, they contain no mention that the victim sustained an injury to her back when the defendant fell on her and that the prosecutor improperly incorporated that evidence in final argument, thus

[5] The defendant is not claiming that the state failed to disclose records, in violation of the requirements of *Brady* v. *Maryland*, supra, 373 U.S. 83. The victim's medical records were subpoenaed and examined by the court in camera. Portions of the records were made available to the parties for use at trial. The records were marked for identification.

expressing a personal opinion as to the victim's credibility.[6] We reject the defendant's claim, as he has failed to provide any legal support, and we know of none, that a prosecutor has a duty to place medical records that are equally available to defense counsel into evidence.

We also reject the defendant's claim that the prosecutor's final argument was an improper expression of her personal opinion of the victim's credibility. The victim testified that she heard a crack when the defendant fell on her in her bed and that she felt a sharp pain in her back. Over time, the pain caused the victim's legs to feel numb and made walking difficult. The victim told her mother of the pain. The victim's mother took the victim to the pediatrician because the victim complained of pain in her back. The pediatrician referred the victim to an orthopedic surgeon to evaluate the victim's complaints of pain. During her final argument, the prosecutor stated that the defendant injured the victim when he fell on her and rhetorically asked why the victim would make this up. It is without question that a prosecutor may fairly comment on evidence and the reasonable inferences to be drawn therefrom that

---

[6] We have reviewed Marsh's medical records of the victim that were marked for identification. They neither explicitly support nor refute the victim's testimony that she felt pain in her back when the defendant fell on her. The records, which were not before the jury, indicate that a differential diagnosis was made with regard to the victim's spine and that treatment was prescribed.

In his brief to this court, the defendant has gone outside the record to quote from various medical dictionaries in order to persuade us that the victim was not credible about the defendant's sexual assault. An appellate court's review is confined to the record before the trial court. See Practice Book § 60-2 (3) (court on its own motion may order improper matter stricken from brief). We have not considered any of the material from medical dictionaries or treatises. Moreover, we will not speculate as to the relationship between the victim's pain and her diagnosis. There was evidence in the record that the victim sought medical care after the defendant fell on her and caused her to feel pain in her back. The jury was free to believe that evidence.

"lead the jury to a conclusion as to the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Morgan*, 70 Conn. App. 255, 287, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002).

We conclude, therefore, that there was sufficient evidence for the jury reasonably to have found that the defendant was guilty of attempt to commit sexual assault in the first degree. Moreover, we conclude that the prosecutor committed no impropriety with respect to the victim's medical records or during final argument and that the state's burden of proof was not lessened.

## II

The defendant's third claim is that his right to due process was violated by the testimony of the state's expert witness regarding child victims of sexual assault because the testimony was an improper expression of opinion regarding the victim's credibility. Moreover, the defendant argues that although the expert never testified that he believed the victim's allegations, the expert's testimony bolstered the victim's testimony because his position of eminence in the field increased the likelihood that the jury would believe him. The defendant cannot prevail on this claim.

At trial, the state called John Leventhal, professor of pediatrics at the Yale School of Medicine and director of the Yale-New Haven Hospital's child sex abuse clinic. Defense counsel did not object to Leventhal's testimony regarding the common characteristics and behavior of children who have been sexually assaulted. On cross-examination, Leventhal agreed with defense counsel that his testimony was of a general nature and that he was not offering an opinion as to the facts of this particular case. The defendant's claim, therefore, is unpreserved, and he asks that we afford it review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. Although the record is adequate for our review, we

decline to review it because it is an evidentiary claim that is not of constitutional magnitude. See *State* v. *Jackson*, 86 Conn. App. 803, 811–12, 862 A.2d 880, cert. denied, 273 Conn. 909, 870 A.2d 1081 (2005).

### III

The defendant's fourth claim is that the state violated his state and federal constitutional rights by failing (1) to disclose records concerning a state police investigation of Trabka (investigation), (2) to preserve records relating to the investigation and (3) to provide defense counsel with accurate information about federal civil rights actions pending against Trabka. The defendant also claims that this information was relevant and material to discredit Trabka. We do not agree.

Whether there has been a violation of *Brady* v. *Maryland*, supra, 373 U.S. 83, is a question of law subject to plenary review. *Walker* v. *Commissioner of Correction*, 103 Conn. App. 485, 491, 930 A.2d 65, cert. denied, 284 Conn. 940, 937 A.2d 698 (2007). The prosecution's suppression "of evidence favorable to an accused . . . violates [federal] due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. To establish a *Brady* violation, the [defendant] must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the [defendant], and (3) it was material [either to guilt or to punishment]." (Internal quotation marks omitted.) *Floyd* v. *Commissioner of Correction*, 99 Conn. App. 526, 533–34, 914 A.2d 1049, cert. denied, 282 Conn. 905, 920 A.2d 308 (2007). "Impeachment evidence as well as exculpatory evidence falls within *Brady*'s definition of evidence favorable to an accused." (Internal quotation marks omitted.) *State* v. *Monteeth*, 208 Conn. 202, 213, 544 A.2d 1199 (1988). The state must "disclose impeachment evidence to a criminal defendant . . . to ensure that the jury knows the facts that might motivate a

witness giving testimony . . . ." (Internal quotation marks omitted.) *Walker* v. *Commissioner of Correction*, supra, 493.

Under the federal constitution, a criminal defendant must demonstrate bad faith on the part of the police in failing to preserve evidence in order to demonstrate a denial of due process. See *Arizona* v. *Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). The constitution of Connecticut, however, provides a criminal defendant with greater protection with regard to the state's preservation of evidence that is favorable to the accused. Our Supreme Court held in *State* v. *Morales*, 232 Conn. 707, 726–27, 657 A.2d 585 (1995), that under our constitution "the good or bad faith of the police in failing to preserve potentially useful evidence cannot be dispositive of whether a criminal defendant has been deprived of due process of law. Rather, in determining whether a defendant has been afforded due process of law under the state constitution, the trial court must employ the [*State* v. *Asherman*, 193 Conn. 695, 724, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985)] balancing test, weighing the reasons for the unavailability of the evidence against the degree of prejudice to the accused. . . . [T]he trial court must balance the totality of the circumstances surrounding the missing evidence, including the following factors: the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, the reason for its nonavailability to the defense and the prejudice to the defendant caused by the unavailability of the evidence." (Internal quotation marks omitted.) *State* v. *Joyce*, 243 Conn. 282, 301, 705 A.2d 181 (1997), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998).

A

The following facts are relevant to the claims concerning the investigation. On December 13, 2006, during

jury selection, the defendant filed a motion for an in camera review of Trabka's personnel file, representing to the court that he had reason to believe that Trabka had been disciplined for "lying about facts concerning cases he had investigated."[7] The prosecutor objected to the request, arguing that it was a "fishing expedition." The prosecutor informed the court that she was aware of one civil action that had been filed against Trabka by a criminal defendant whose prosecution had not yet concluded. The court granted the defendant's motion for in camera review. After thoroughly reviewing Trabka's personnel file, the court informed counsel that it had found nothing in the file that would reflect on Trabka's credibility.

The following day, the prosecutor represented to the court that Trabka had informed her that many years ago, he had been the subject of an investigation by the state police.[8] The focus of the investigation was whether Trabka had provided false information during the course of his testimony in a criminal case. The prosecutor understood that Trabka had been cleared by the investigation, nonetheless she was attempting to get copies of the records pertaining to the investigation. Later in the day, the prosecutor informed the court that Peter Fearon, an investigator with the office of the chief state's attorney, had learned that the investigation had been conducted fourteen years ago, and, because Trabka had been exonerated, the records had been destroyed. The prosecutor agreed to provide defense counsel with whatever information Fearon had obtained about the investigation.

Prior to Trabka's testifying, the court heard arguments from the prosecutor and defense counsel regarding that testimony. Although there were no written

[7] The defendant had filed a request for disclosure on December 7, 2006.

[8] The prosecutor represented to the court that she had no knowledge of the investigation prior to defense counsel's bringing the matter to the court's attention.

records, on the basis of information she obtained from Fearon, the prosecutor represented to the court that Trabka was the subject of the investigation for providing false information in his testimony in a motor vehicle case. Trabka testified in that case that he had made a telephone call to police headquarters asking for information about a particular motor vehicle. He testified that he had made the call from a certain telephone booth. That telephone booth, however, did not exist at the time he allegedly made the call. The investigation was instigated by the prosecutor for that case and the supervising assistant state's attorney. The investigation revealed that Trabka had used a telephone to call the desk officer but was "mistaken about which [telephone] he had used." The prosecutor represented to the court that the investigation cleared Trabka of wrongdoing and found no probable cause to arrest him for perjury. The prosecutor argued that the defendant should not be permitted to question Trabka about the investigation because the incident was remote in time, had minimal bearing on Trabka's credibility and had a tendency to interject collateral issues at trial. Defense counsel responded that although the incident may not reflect Trabka's reputation for telling the truth, it did reflect on his ability to recollect.

The court found that the investigation was subject to the requirements of *Brady* v. *Maryland*, supra, 373 U.S. 83, especially because the investigation was requested by members of the office of the state's attorney and the state had failed to turn over the records to the defendant as requested. The court ruled that the defendant would be permitted on cross-examination to ask Trabka "if he testified under oath that he made a phone call that was from a phone booth found not to exist, or at least not working, and if the prosecutors, including the one trying the case, had asked for a state police investigation of him for perjury." During his

cross-examination of Trabka, defense counsel asked him about the investigation.[9]

"A lack of knowledge about the credibility of a witness involves the constitutional rights of confrontation. See *Davis* v. *Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). That lack of knowledge can be ameliorated by an extensive and effective cross-examination." *State* v. *Leduc*, 40 Conn. App. 233, 249, 670 A.2d 1309 (1996), on appeal after remand, 44 Conn. App. 744, 690 A.2d 1390, cert. denied, 241 Conn. 909, 695 A.2d 541 (1997).

We now apply the *Asherman* balancing test to the circumstances surrounding the missing report of the investigation. The first factor is the materiality of the records. "[F]avorable evidence is that evidence which . . . might have led the jury to entertain a reasonable doubt about . . . guilt . . . and this doubt must be one that did not otherwise exist. . . . [E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

---

[9] The relevant portion of defense counsel's cross-examination follows:

"[Defense Counsel]: All right. You had some difficulty over at the state's attorney's office in Derby about fourteen years ago. Do you recall that?

"[The Witness]: Um, I had—yes.

"[Defense Counsel]: Do you recall that then assistant state's attorney Jerry Esposito and the head of that office, Frank McQuade, had asked the state police to do an investigation of you regarding what they believed at the time to be your perjuring yourself on the [witness] stand in a particular case?

"[The Witness]: Yes, I do."

Immediately thereafter, on redirect examination, the prosecutor questioned Trabka as follows:

"[The Prosecutor]: Detective Trabka, what was the outcome of that investigation?

"[The Witness]: I was exonerated.

"[The Prosecutor]: And how long have you been an officer?

"[The Witness]: Eighteen years.

"[The Prosecutor]: And you've testified in court since then.

"[The Witness]: At least forty, fifty times."

A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *State* v. *McClelland,* 113 Conn. App. 142, 163, 965 A.2d 586 (2009).

In this case, Trabka testified that the defendant was distraught that he had caused the victim to abuse drugs and wanted to apologize to her. He further testified that he permitted the defendant to write the victim a note in which the defendant apologized to the victim for touching her inappropriately. The focus of the fourteen year old investigation of Trabka was whether he had perjured himself in a case, and was it material to his veracity. The investigation, however, exonerated Trabka and therefore would not have been favorable information to impeaching his credibility. The prosecutor made the facts of the investigation known to the defendant, who was permitted to question Trabka about it on cross-examination. On cross-examination, Trabka admitted that he had been investigated for allegedly giving perjured testimony and testified that he had been exonerated. The jury, therefore, was aware of the situation. The state also points out that Hubyk testified at trial and that his testimony was cumulative of Trabka's. There was no evidence of bad faith or even negligence on the part of the state for not maintaining records of the investigation that had taken place fourteen years ago and exonerated Trabka. Compare *State* v. *Valentine,* 240 Conn. 395, 418, 692 A.2d 727 (1997). After balancing all of the circumstances, we conclude that the outcome of the defendant's trial would not have been different had the state retained the records of the investigation and made them available to the defendant. The defendant therefore has not been denied the right to due process under either the federal or state constitutions.

## B

The defendant finally claims that the prosecutor failed to provide him with information pertaining to civil

actions that had been brought against Trabka. Defense counsel informed the court that he was aware of three federal civil rights cases pending against Trabka in Connecticut and that counsel would question Trabka about them. The prosecutor objected, stating that allegations in a legal action are not proof of anything and that evidence of the pending civil actions would be more prejudicial than probative. The court treated the objection as a motion in limine and granted it, citing *State v. Valentine,* supra, 240 Conn. 408 (evidence resulting in minitrial on collateral case properly excluded).

On appeal, the defendant claims that his right to due process was violated because the state failed to make accurate information about the pending federal actions available to him. The defendant has not briefed this claim beyond a mere assertion of it. Although we generally do not review claims that are inadequately briefed; see *Stuart v. Stuart,* 112 Conn. App. 160, 165 n.2, 962 A.2d 842, cert. granted on other grounds, 290 Conn. 920, 966 A.2d 237 (2009); the statement of the claim itself provides an adequate basis on which to rule. We conclude that the court properly precluded defense counsel from cross-examining Trabka on the basis of allegations in actions, in which the claims had not been proven, as they were pending at the time. See *State v. Bova,* 240 Conn. 210, 221, 690 A.2d 1370 (1997). As the state pointed out in its brief, it is not a party to the federal actions, the federal complaints were not in its possession, and the federal actions were a matter of public record to which the state and the defendant had equal access. We agree with the state for the reasons stated.

The judgment is affirmed.

In this opinion the other judges concurred.